UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RICARDO TOLSON,

        Petitioner,

                             CASE NO. 2:10-CV-14114

v.                       JUDGE GEORGE CARAM STEEH
                             MAGISTRATE JUDGE PAUL J. KOMIVES

CINDI S. CURTIN,

        Respondent.[1]
_____/


# REPORT AND RECOMMENDATION


*Table of Contents*

I.       RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.     *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.     *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     C.     *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          1.     *Procedural Default Generally* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          2.     *Claims I & II* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
          3.     *Claims V & VI* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     D.     *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     E.     *Sufficiency and Weight of the Evidence (Claims III & IV)* . . . . . . . . . . . . . . . . . . . . . . . . 12
          1.     *Weight of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
          2.     *Sufficiency of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
               a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
               b. Assault with Intent to Commit Murder . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
               c. Assault with Intent to Commit Great Bodily Harm . . . . . . . . . . . . . . . . . . . . . . 18
     F.     *Sentencing Claims (Claims V & VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
          1.     *Exceeding the Guidelines* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
          2.     *Blakely* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
     G.     *Ineffective Assistance of Counsel (Claims I & II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
          1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
          2.     *Trial Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
          3.     *Appellate Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
     H.     *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . 31
          1.     *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
          2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
     I.     *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

_____

     [1]By Order entered this date, Cindi S. Curtin has been substituted in place of Steve Rivard as the proper respondent in this action.

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.     REPORT:

A.      *Procedural History*

1.      Petitioner Ricardo Tolson is a state prisoner, currently confined at the Oaks Correctional Facility in Manistee, Michigan.

2.      On July 11, 2006, petitioner was convicted of assault with intent to commit murder, MICH. COMP. LAWS § 750.83; two counts of assault with intent to commit great bodily harm less than murder, MICH. COMP. LAWS § 750.84, and aggravated domestic assault, MICH. COMP. LAWS § 750.81a(2), following a bench trial in the Wayne County Circuit Court.  On August 25, 2006, he was sentenced as a second habitual offender, MICH. COMP. LAWS § 769.10, to concurrent terms of 29-60 years' imprisonment on the assault with intent to commit murder conviction, 5-15 years' imprisonment for each of the assault with intent to commit great bodily harm convictions, and one year's imprisonment for the domestic assault conviction.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

> I.      THERE WAS INSUFFICIENT EVIDENCE THAT RICARDO TOLSON INTENDED TO MURDER RAQUEL RIVERA WITH A FIVE POUND BARBELL OR INTENDED TO COMMIT GREAT BODILY HARM TO AARON RIVERA WITH A BROKEN KITCHEN KNIFE.
>
> II.     A NEW TRIAL SHOULD BE GRANTED SINCE THE TRIAL COURT'S VERDICT WAS AGAINST THE GREAT WEIGHT OF THE EVIDENCE.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Tolson*, No. 272781, 2007 WL 3085518 (Mich. Ct. App. Oct. 23, 2007) (per curiam).

4.      Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v. Tolson*, 480 Mich. 1135, 745 N.W.2d 786 (2008).

5.      Petitioner subsequently filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising claims challenging his sentence.  On November 21, 2008, the trial court denied petitioner's motion, concluding that petitioner had failed to establish good cause for or actual prejudice arising from his failure to raise these claims on direct appeal as required by MICH. CT. R. 6.508(D)(3).  Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, raising the following claims, the first two of which were raised on direct appeal:

I.      THERE WAS INSUFFICIENT EVIDENCE THAT RICARDO TOLSON INTENDED TO MURDER RAQUEL RIVERA WITH A FIVE POUND BARBELL OR INTENDED TO COMMIT GREAT BODILY HARM TO AARON RIVERA WITH A BROKEN KITCHEN KNIFE, WHICH DENIED DEFENDANT AT HIS FIFTH AND FOURTEENTH AMENDMENT RIGHTS AND DUE PROCESS OF LAW WHERE HE WAS NOT PROPERLY CHARGED WITH FELONIOUS ASSAULT, WAS FORCED TO DEFEND AGAINST INTENT TO MURDER, THE DEFENDANT WAS PREJUDICED AND A REVERSAL IS MANDATED AND DEFENDANT SHOULD BE DISCHARGED FROM CUSTODY, OR A NEW TRIAL ORDERED.

II.     A NEW TRIAL SHOULD BE GRANTED SINCE THE TRIAL COURT'S VERDICT WAS AGAINST THE GREAT WEIGHT OF THE EVIDENCE.

III.    THE TRIAL COURT FAILED TO STATE SUBSTANTIAL AND COMPELLING REASONS FOR DEPARTING FROM THE SENTENCING GUIDELINES AND DEFENDANT MUST BE RESENTENCED BEFORE A DIFFERENT JUDGE.

IV.     DEFENDANT MR. TOLSON IS ENTITLED TO RESENTENCING BECAUSE THE SENTENCE WAS ENHANCED ON THE BASIS OF FACTS NOT PROVEN AT TRIAL BEYOND A REASONABLE DOUBT, IN VIOLATION OF THE DEFENDANT'S RIGHT TO TRIAL, AS

GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS.

V.    DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL REQUIRED UNDER THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND MADE APPLICABLE TO THE STATE OF MICHIGAN THROUGH THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION BECAUSE DEFENDANT SUFFERED PREJUDICE AS A RESULT OF THE COUNSEL'S INACTION; THUS, MR. TOLSON IS ENTITLED TO A NEW TRIAL, OR IN THE ALTERNATIVE, AN EVIDENTIARY HEARING ON SAID CLAIM.

VI.    DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL BECAUSE HIS APPELLATE ATTORNEY DID NOT RAISE THE ABOVE ISSUES IN HIS APPEAL OF RIGHT AND WAS NOT EFFECTIVE, THUS DEFENDANT IS ENTITLED TO A NEW TRIAL.

The Michigan Court of Appeals denied petitioner's application for leave to appeal in a standard order, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Tolson*, No. 294935 (Mich. Ct. App. Feb. 12, 2010) (order). Petitioner thereafter filed an application for leave to appeal in the Michigan Supreme Court, omitting the two claims that had previously been raised on direct appeal. The Supreme Court denied petitioner's application in a standard order, because petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Tolson*, 487 Mich. 855, 784 N.W.2d 217 (2010).

6.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on October 13, 2010. As grounds for the writ of habeas corpus, he raises six claims: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; (3) insufficient evidence to support the assault with intent to commit murder and assault with intent to commit great bodily harm convictions; (4) verdict against the weight of the evidence; (5) improper sentence exceeding

4

the guidelines range; and (6) improper sentence in violation of petitioner's right to a jury trial.

7.      Respondent filed her answer on April 27, 2011.  She contends that petitioner's first, second, fifth, and sixth claims are barred by petitioner's procedural default in the state courts, and that all of the claims are without merit.

8.      Petitioner filed a reply to respondent's answer on June 10, 2011.

B.     *Factual Background Underlying Petitioner's Conviction*

Petitioner's conviction arises from the March 5, 2006, assault of his girlfriend and her son. The evidence adduced at trial was accurately summarized by the Michigan Court of Appeals:

> On the morning of March 5, 2006, defendant and his girlfriend, Raquel Rivera, had an argument regarding the use of her car. After the argument, they did not interact for the rest of the day. Sometime after 12:30 a.m., as Raquel slept, defendant struck Raquel in the back of the head with a five-pound barbell. Raquel awoke up with a headache, touched the back of her head where it hurt, and felt a gash. Defendant told Raquel that she had fallen and hit her head, and that he would ask Raquel's daughter, Laishe Rivera, to take her to the hospital. Defendant then ran from the room. Raquel noticed the barbell on the floor covered in blood. She tried to find her telephone to call 911, but defendant had taken it. However, she found defendant's cellular telephone in the room and called 911.
>
> After defendant left Raquel's bedroom, he entered the bedroom of Raquel's son, Aaron Rivera. He woke Aaron and tried to cut his neck with a knife, but the knife came apart at the handle. Aaron ran to Laishe's room and blocked the door. Defendant attempted to enter Laishe's room but when she confronted him, he left and went to another area of the house.
>
> Laishe and Aaron went to Aaron's room, found the broken knife, and hid it. Soon thereafter, defendant returned to the hallway. Laishe tried to go upstairs to see her mother, but defendant would not let her. Then defendant went upstairs, stabbed Raquel in the neck multiple times, and returned downstairs. Defendant left the house, got into his car, and drove away. An officer near the scene saw defendant leave, followed him, and eventually stopped and arrested him.

*Tolson*, 2007 WL 3085518, at *1.  In addition to the testimony of Raquel, Leisha, and Aaron Rivera, as summarized above, the prosecution presented police officer testimony that, upon their arrest of petitioner, police officers found a cell phone and knife, both with blood on them, in petitioner's car.

The officers also testified that petitioner volunteered: "I didn't cut her.  I didn't do anything.  All I did was push the bitch."  A DNA analyst testified that blood on a latex glove found in the home had a mixture of two DNA profiles, and that Raquel Rivera could not be excluded as the major contributor and petitioner could not be excluded as the minor contributor.  The blood on the knife found in petitioner's car matched Raquel Rivera's DNA.

C.     *Procedural Default*

Respondent first contends that all but petitioner's third and fourth claims are barred by petitioner's procedural default in the state courts.  With respect to petitioner's ineffective assistance claims (Claim I and II), petitioner contends that the claims were not properly exhausted and, because petitioner has no further avenue to present these claims, they should be deemed technically exhausted but defaulted.  With respect to petitioner's sentencing claims (Claims V and VI), respondent contends that the claims are barred because petitioner failed to raise these claims on direct appeal.  The Court should conclude that respondent has failed to meet her burden of establishing that Claims I and II are defaulted, and that although defaulted it is necessary to consider the merits of Claims V and VI.

1.     *Procedural Default Generally*

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment.  *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489

6

U.S. at 263.  Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

2.    *Claims I & II*

Petitioner contends that Claims I and II, alleging ineffective assistance of trial and appellate counsel, respectively, were not properly exhausted, and that petitioner's failure to exhaust these claims has rendered them procedurally defaulted.  The federal habeas statute provides, in relevant part, that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State[.]" 28 U.S.C. § 2254(b)(1)(A).  Thus, "[f]ederal habeas relief is available to state prisoners only after they have exhausted their claims in state court."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999).  To satisfy the exhaustion requirement, a petitioner "must have 'fairly presented the substance of each of his federal constitutional claims to the state courts.'" *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (quoting *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995)).  Further, the petitioner must fairly present the claim at each level of state court review.  *See O'Sullivan*, 526 U.S. at 845-47. In *Coleman v. Thompson*, *supra*, the Supreme Court suggested in dicta that where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts,

7

"there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims." *Coleman*, 501 U.S. at 735 n.*. Although the *Coleman* footnote was dicta, it has subsequently been applied by both the Supreme Court and the Sixth Circuit. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Hannah v. Conley*, 49 F.3d 1193, 1195-96 (6th Cir. 1995) (per curiam). Where no further avenues to present a claim exist, the claim is deemed technically exhausted, and the question becomes solely whether the claim is barred by a procedural default. *See Broom v. Mitchell*, 441 F.3d 392, 399-400 (6th Cir. 2006). Respondent argues that petitioner has no further avenue of state court review for these claims because he has already filed one motion for relief from judgment, and he is prohibited from filing a second such motion. *See* MICH. CT. R. 6.502(G).

Notwithstanding respondent's contention, the Court cannot conclude that petitioner failed to properly exhaust his ineffective assistance of counsel claims. There is no question that petitioner raised these claims in both the Michigan Court of Appeals and the Michigan Supreme Court following the trial court's denial of his motion for relief from judgment. While respondent contends that petitioner did not raise these claims in the motion itself, a copy of petitioner's motion has not been provided in the state court materials submitted by respondent. Respondent bears the initial burden of demonstrating that petitioner's claims are procedurally defaulted. *See Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010); *Pike v. Guarino*, 492 F.3d 61, 73 (1st Cir. 2007). Because respondent has not provided a copy of the motion for relief from judgment, she has failed to carry her burden. And because, as discussed below, the claims are without merit, the Court may deny them on this basis without affording respondent an opportunity to present evidence that the

claim is defaulted.

3.      *Claims V & VI*


Respondent contends that petitioner's fifth and sixth claims, asserting errors in sentencing, are barred by petitioner's procedural default because he failed to raise them on direct appeal and the trial court found the claims barred because petitioner could not establish good cause for and actual prejudice from his failure to do so under MICH. CT. R. 6.508(D)(3). Although respondent is correct that petitioner's claims are defaulted on this basis, it is nevertheless necessary to consider the claims on the merits. Petitioner contends that his appellate counsel was ineffective for failing to raise these claims on direct appeal. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).[2] To demonstrate that appellate counsel was ineffective petitioner must show, *inter alia*, that his claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999)

---

[2]Where ineffective assistance of counsel is asserted as cause to excuse a procedural default, the ineffective assistance claim which is asserted as cause must itself be both exhausted, *see Edwards*, 529 U.S. at 451-52 (discussing *Murray*, 477 U.S. at 489), and not procedurally defaulted, *see id*. at 452-53. While respondent contends that petitioner's ineffective assistance of appellate counsel claim was not properly exhausted and is now, therefore, defaulted, as noted above the Court cannot reach this conclusion on the record as it now stands. Thus, I assume at this point that petitioner could rely on appellate counsel's ineffective assistance to excuse his procedural default.

(considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

D.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694.  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court

10

to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the

decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.      *Sufficiency and Weight of the Evidence (Claims III & IV)*

        Petitioner contends that the verdict in his case was against the weight of the evidence, and that there was constitutionally insufficient evidence to prove his guilt beyond a reasonable doubt. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

        1.      *Weight of the Evidence*

        To the extent that petitioner argues that he is entitled to habeas relief because the jury's verdict was against the great weight of the evidence, his claim is not cognizable.  It is well established that habeas review is not available to correct errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws.").  The federal constitution requires only that the evidence be sufficient to sustain the conviction under the standard established in *Jackson v. Virginia, infra*.  Where the evidence is sufficient as a matter of due process, a claim that the verdict was against the weight of the evidence presents a state law issue which is not cognizable on habeas review. *See Douglas v. Hendricks*, 236 F. Supp. 2d 412, 435-36 (D.N.J.  2002); *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002) (Friedman, J.); *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001); *cf. Tibbs v. Florida*, 457 U.S. 31, 44 (1982) (noting in a different context that "trial and appellate

judges commonly distinguish between weight and sufficiency of the evidence."). In short, "[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight of the evidence.'" *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985).

Thus, the only question here is whether the evidence was constitutionally sufficient to prove all of the elements of the offense for which petitioner was convicted beyond a reasonable doubt.

2.   *Sufficiency of the Evidence*

a.  *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. "[I]t is the responsibility of the jury–not the court–to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 4 (2011) (per curiam). The *Jackson* standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319). Likewise, a reviewing court "do[es] not make

13

credibility determinations in evaluating the sufficiency of the evidence." *United State v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *see also*, *United States v. Bailey*, 444 U.S. 394, 424-25 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story."). It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326. As the Court has explained, "the only question under *Jackson* is whether [the jury's finding] was so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065. Under the amended version of § 2254(d)(1) a federal habeas court's review is "twice-deferential." *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam). A state court's decision that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference under AEDPA." *Coleman*, 132 S. Ct. at 2065; *see also*, *Cavazos*, 132 S. Ct. at 4.

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman*, 132 S. Ct. at 2064 (citation omitted) (quoting *Jackson*, 443 U.S. at 324 n.16). Michigan law provides that "[a]ny person who shall assault another with intent to commit the crime of murder, shall be guilty of a felony[.]" MICH. COMP. LAWS § 750.83.

14

Under this provision, "the crime of assault with intent to commit murder requires proof of three elements: '(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder.'" *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (quoting *People v. Plummer*, 229 Mich. App. 293, 581 N.W.2d 753, 759 (1998); *People v. Hoffman*, 225 Mich. App. 103, 570 N.W.2d 146, 150 (1997)).  Under Michigan law, "[t]o convict a defendant of assault with intent to do great bodily harm less than murder, the prosecution must establish the following elements: (1) an attempt or offer with force or violence to do corporal hurt to another, and (2) an intent to do great bodily harm less than murder."  *Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004) (Gadola, J.) (citing MICH. COMP. LAWS § 750.84; *People v. Mitchell*, 149 Mich. App. 36, 38, 385 N.W.2d 717 (1986)), *aff'd*, 173 Fed. Appx. 437 (6th Cir. 2006); *see also*, *People v. Bailey*, 451 Mich. 657, 668-69, 549 N.W.2d 325, 331 (1996), *amended on other grounds*, 453 Mich. 1204, 551 N.W.2d 163 (1996).  As with other mental-state elements, intent to commit murder or great bodily harm need not be proved by direct evidence, but rather may be proved by circumstantial evidence and reasonable inferences drawn from the evidence.  *See Warren v. Smith*, 161 F.3d 358, 360 (6th Cir. 1998).  "Furthermore, because it is difficult to prove a defendant's state of mind, minimal circumstantial evidence is sufficient."  *Tucker v. Palmer*, 541 F.3d 652, 660 (internal quotation omitted).

### b. Assault with Intent to Commit Murder

Petitioner contends that the prosecution presented insufficient evidence to establish that he assaulted Raquel Rivera with the barbell or that he intended to kill her when he did so, or that he attempted to stab Aaron Rivera with a knife or that he intended to commit great bodily harm when he did so.  With respect to the assault on Raquel, petitioner contends that her testimony that

15

petitioner hit her with the barbell is belied by (a) the testimony of a forensic pathologist who testified at the preliminary examination that, from what she could see, there was not enough blood on the barbell for it to have been a weapon, and (b) the fact that nothing in the medical record shows that Raquel suffered a fractured skull or concussion. The Michigan Court of Appeals rejected these arguments, reasoning:

> Raquel received between 18 and 20 staples to the back of her head. There was blood on her bed and a bloody five-pound barbell on the floor. Further, defendant attempted to prevent Raquel from calling for help by taking her telephone, and he then assaulted her son. When defendant returned to Raquel's room, he stabbed her and took his cellular telephone from her as she was again calling for help. We will not interfere with the trier of fact's role of determining the weight of evidence or the credibility of witnesses. Therefore, we conclude that the prosecutor presented sufficient evidence for the trial court to find that defendant assaulted Raquel with the barbell with the intent to murder her.
>
> Defendant asserts that the trial court's finding that Raquel was on a ventilator for two weeks was erroneous and, therefore, Raquel's injuries were not severe enough to establish that he had the intent to kill her. Although defendant claims that the length of time the trial court concluded Raquel spent in the hospital is not accurate, he does not dispute that Raquel was admitted to the intensive care unit and placed on a ventilator. Regardless, the severity, or even the existence, of injury is not an element of assault with intent to commit murder. In *People v. Johnson*, 54 Mich.App 303, 304; 220 NW2d 705 (1974), the Court found that the defendant committed assault with intent to commit murder when he leaned out the window of his vehicle and fired a sawed-off shotgun at an officer, even though the officer was not hit. The Johnson Court concluded, "The result and purpose of such an assault is death. The unjustified and unexcused intention to kill when committing an assault constitutes the crime charged." *Id*. at 304. Therefore, intent is not mitigated by the severity of the victim's injuries.
>
> In this case, Raquel's injuries were evidence of the assault and aided in the finding of intent. Intent is inferred from the entirety of the facts presented at trial, and it is for the trier of fact rather than this Court to determine what inferences can be fairly drawn from the evidence. Although the trial court could use Raquel's hospitalization and condition after the incident in its analysis of intent, the existence of injury was not required to establish that defendant committed an assault with intent to commit murder.

*Tolson*, 2007 WL 3085518, at *2-*3. This determination was reasonable.

As to the assault itself, the victim testified that she woke up with a headache. She noticed

extensive blood on her bed and a barbell, which was normally kept in the basement, on her floor covered with blood. This was sufficient for the trier of fact to conclude that petitioner assaulted the victim with the barbell, particularly in light of the fact that there was testimony petitioner assaulted her again with a knife and prevented her from summoning help. While the prosecution's DNA expert briefly stated that she had determined that there was not enough blood on the barbell for her to deem that it had been used as a weapon, *see* Trial Tr., dated 7/10/06, at 40, this was a brief statement describing all the evidence she had received, and was not followed up on by either the prosecutor or defense counsel. The expert was qualified as an expert in DNA analysis, and there is no evidence that she had any expertise in blood spatter evidence or any other discipline that would allow her to opine on whether the amount of blood on the barbell was consistent with it being used as a weapon. Further, the victim testified that there was blood "everywhere," that the barbell had not been in her room when she went to bed, and that the barbell had blood on the end of it. *See id*., dated 7/6/06, at 15, 38. It was the trier of fact's job to resolve any conflicts in the evidence, *see Jackson*, 443 U.S. at 326, and in light of the victim's testimony the trial judge's conclusion that petitioner had struck the victim with the barbell was rational.

Further, the victim's testimony was sufficient to establish that petitioner intended to kill her at the time of the assault. As explained above it is well established that "[t]he specific intent to kill may be proven by inference from any facts in evidence." *Warren*, 161 F.3d at 361 (internal quotation omitted). Specifically, and in addition to other factors, the Court "may take into consideration 'the nature of the defendant's acts constituting the assault . . . [and] whether the instrument and means used were naturally adapted to produce death[].'" *Id*. (quoting *People v. Taylor*, 422 Mich. 554, 375 N.W.2d 1, 8 (1985)). Here, there was evidence that petitioner struck

17

the victim in the head with a barbell while she was slipping, prevented her from seeking assistance, and assaulted her with a knife, stabbing her in the neck.  The nature of the assault provides strong circumstantial evidence that petitioner intended to kill the victim.  *See Schneider v. Booker*, No. 2:10-CV-15017, 2012 WL 2804436, at *10 (E.D. Mich. July 10, 2012) (Steeh, J.) (petitioner's use of a heavy object to strike victim in the head supported a finding of premeditation for murder charge); *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001) (Tarnow, J.) (citing *People v. Turner*, 62 Mich. App. 467, 470, 233 N.W.2d 617, 619 (1975)) ("Use of a lethal weapon will support an inference of an intent to kill.").  Further, as the court of appeals explained, under Michigan law no showing of physical injury is required to establish the elements of assault with intent to commit murder or great bodily harm.  *See People v. Harrington*, 194 Mich. App. 424, 430, 487 N.W.2d 479, 483 (1992).  To the extent the victim's injuries call into question petitioner's mental state, that was a matter for the trier of fact to resolve.  *See Jackson*, 443 U.S. at 326.  In light of the victim's testimony, the trial court's verdict was not "so insupportable as to fall below the threshold of bare rationality."  *Coleman*, 132 S. Ct. at 2065.  It follows that the court of appeals's rejection of petitioner's claim was not unreasonable, and that petitioner therefore is not entitled to habeas relief on this claim.

### c. Assault with Intent to Commit Great Bodily Harm

Petitioner also contends that the prosecution presented insufficient evidence to establish that he assaulted Aaron Rivera with the intent to commit great bodily harm.  Petitioner contends that the victim's testimony that the knife broke when it hit his neck is not credible in light of the fact that the victim did not seek or require any medical attention, and because there was not a proper chain of custody for the knife because it was not turned over to the police until three weeks after the assault.

18

The Michigan Court of Appeals rejected petitioner's claim, reasoning that the victim testified petitioner attempted to cut him with the knife, but the knife came apart at the handle.  The court further explained that there was "no evidence in the record to show that defendant was aware of the defect and meant for the knife to come apart upon touching Aaron." *Tolson*, 2007 WL 3085518, at *3.  The court concluded that Aaron's testimony, taken together with the evidence that petitioner chased Aaron from the room and wrestled him to the ground, supported a finding that petitioner intended to cause great bodily harm to Aaron.  *See id.*  This determination was reasonable.

The victim testified that petitioner assaulted him with a knife, attempting to stab him in the throat.  This action provides strong evidence that petitioner intended to inflict great bodily harm. *See People v. Lugo*, 214 Mich. App. 699, 711, 542 N.W.2d 921, 927 (1995); *People v. Fobb*, 145 Mich. App. 786, 788, 378 N.W.2d 600, 601 (1985) (per curiam).  As noted above, the fact that the victim was not injured does not negate this finding, as an injury is not an element of the offense. *See Harrington*, 194 Mich. App. at 430, 487 N.W.2d at 483.  Further, any problems in the chain of custody merely presented an issue going to the weight of the evidence, an issue which it was the province of the trier of fact to solve.  *See United States v. Doggins*, 633 F.3d 379, 383-84 (5th Cir. 2011); *Patterson v. Headley*, 58 F. Supp. 2d 274, 279 (S.D.N.Y. 1999).  In light of the victim's testimony, the trial court's finding was not "so insupportable as to fall below the threshold of bare rationality," *Coleman*, 132 S. Ct. at 2065, and the court of appeals's rejection of petitioner's claim was therefore reasonable.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.     *Sentencing Claims (Claims V & VI)*

Petitioner next raises two challenges to his sentence.  The Court should conclude that

19

petitioner is not entitled to habeas relief on these claims.

      1.     *Exceeding the Guidelines*

Petitioner contends that the trial court erred in departing upward from the sentencing guidelines without substantial and compelling reasons.  This claim is not cognizable on habeas review.  A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987).  Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).  Petitioner's claim that the court improperly scored or departed from the guidelines range raises issues of state law that are not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also, Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review).  Thus, petitioner is not entitled to habeas relief on his claims relating to the trial court's scoring of, or departure from, the Michigan sentencing guidelines.

      2.     <u>*Blakely*</u>

Petitioner also contends that his sentence was enhanced based on facts not found beyond a reasonable doubt by the trier of fact, in violation of the Supreme Court's decisions in *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  In *Apprendi*,

the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.  In *Blakely*, the Court considered the applicability of *Apprendi* to a state sentencing guidelines scheme similar to the United States Sentencing Guidelines.  The state in that case argued that guidelines findings were not prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which increased the statutory maximum penalty to which the defendant was exposed.  The Court in *Blakely* rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*  In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original).  Finally, in *United States v. Booker*, 543 U.S. 220 (2005), the Court took the step logically suggested by *Blakely*, concluding that the United States Sentencing Guidelines are unconstitutional under *Apprendi* because they allow federal judges to impose sentences based on facts not found by a jury beyond a reasonable doubt. *See Booker*, 543 U.S. at 233, 237-43.

*Blakely* and *Apprendi*, however, are inapplicable here.  Michigan law provides for an indeterminate sentencing scheme, unlike the determinate sentencing schemes at issue in *Blakely* and *Booker*.  Under Michigan law the defendant is given a sentence with a minimum and a maximum sentence.  The maximum sentence is not determined by the trial judge but is set by law.  *See People v. Drohan,* 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool,* 470 Mich.

715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); MICH. COMP. LAWS § 769.8. "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161, 715 N.W.2d at 790. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 236 n.7 (2003) (discussing MICH. COMP. LAWS § 769.34(2)). Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *See Claypool,* 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

*Blakely* is inapplicable here because *Blakely* is concerned only with the *maximum* penalty which is authorized by a jury's findings or a defendant's plea: if some additional factor increases the defendant's penalty beyond that which could be imposed solely on the basis of the jury's findings or the defendant's plea, *Blakely* requires that those facts be found by a jury beyond a reasonable doubt (or be themselves pleaded to by a defendant). As explained above, unlike the guidelines scheme at issue in *Blakely*, the Michigan sentence guidelines help determine only the minimum portion of a defendant's indeterminate sentence. The maximum is, in every case, the statutory maximum authorized by law. *See Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14; MICH. COMP. LAWS § 769.8. Petitioner's conviction on the armed robbery charge, therefore, contained all of the factual findings necessary to impose the statutory maximum (life imprisonment) on that charge. *See Drohan*, 475 Mich. at 162, 715 N.W.2d at 790 ("Thus, the trial court's power to impose a sentence is always derived from the jury's verdict, because the 'maximum-minimum' sentence will always fall within the range authorized by the jury's verdict.").

This being the case, petitioner's sentence did not violate *Blakely*. The Supreme Court has

22

repeatedly made clear that the *Apprendi* rule is concerned only with the maximum sentence which

is authorized by a jury's verdict or a defendant's plea.  As the Supreme Court explained in *Harris*

*v. United States*, 536 U.S. 545 (2002):

> *Apprendi* said that any fact extending the defendant's sentence beyond the maximum
> authorized by the jury's verdict would have been considered an element of an
> aggravated crime–and thus the domain of the jury–by those who framed the Bill of
> Rights.  The same cannot be said of a fact increasing the mandatory minimum (but
> not extending the sentence beyond the statutory maximum), for the jury's verdict
> authorized the judge to impose the minimum with or without the finding.

*Harris*, 536 U.S. at 557.  This distinction is important because the only issue under the Sixth

Amendment is whether the judge is impinging on the role of the jury.  For this reason, the Court

explicitly excepted indeterminate sentencing schemes such as Michigan's from its holding in

*Blakely*.  Rejecting an argument raised by Justice O'Connor in dissent, the Court explained:

> Justice O'Connor argues that, because determinate sentencing schemes
> involving judicial factfinding entail less judicial discretion than indeterminate
> schemes, the constitutionality of the latter implies the constitutionality of the former.
> This argument is flawed on a number of levels.  First, the Sixth Amendment by its
> terms is not a limitation on judicial power, but a reservation of jury power.  It limits
> judicial power only to the extent that the claimed judicial power infringes on the
> province of the jury.  Indeterminate sentencing does not do so.  It increases judicial
> discretion, to be sure, but not at the expense of the jury's traditional function of
> finding the facts essential to lawful imposition of the penalty.   Of course
> indeterminate schemes involve judicial factfinding, in that a judge (like a parole
> board) may implicitly rule on those facts he deems important to the exercise of his
> sentencing discretion.  But the facts do not pertain to whether the defendant has a
> legal *right* to a lesser sentence–and that makes all the difference insofar as judicial
> impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 309 (citation omitted).

Under this reasoning, it is clear that Michigan's indeterminate sentencing guideline scheme,

under which the maximum is established by statute and only the minimum term is based on judicial

factfinding, does not violate the Sixth Amendment, as both the Sixth Circuit and the Michigan

23

Supreme Court have repeatedly held. *See Montes v. Trombley*, 599 F.3d 490, 496-97 (6th Cir. 2010); *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009); *Drohan*, 475 Mich. at 164, 715 N.W.2d at 791-92; *Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.    *Ineffective Assistance of Counsel (Claims I & II)*

Finally, petitioner contends that both his trial and appellate counsel rendered constitutionally inadequate assistance of counsel.

1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *Id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize

24

that counsel is strongly presumed to have rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment." *Id*. at 690.  With respect to the

prejudice prong, the reviewing court must determine, based on the totality of the evidence before

the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would

have had a reasonable doubt respecting guilt." *Id*. at 695.  It is petitioner's burden to establish the

elements of his ineffective assistance of counsel claim.  *See United States v. Pierce*, 63 F.3d 818,

833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v.*

*Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is

difficult to meet:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v.*
> *Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An
> ineffective-assistance claim can function as a way to escape rules of waiver and
> forfeiture and raise issues not presented at trial, and so the Strickland standard must
> be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the
> integrity of the very adversary process the right to counsel is meant to serve.
> *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the
> standard for judging counsel's representation is a most deferential one. Unlike a later
> reviewing court, the attorney observed the relevant proceedings, knew of materials
> outside the record, and interacted with the client, with opposing counsel, and with
> the judge. It is "all too tempting" to "second-guess counsel's assistance after
> conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*,
> 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*,
> 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether
> an attorney's representation amounted to incompetence under "prevailing
> professional norms," not whether it deviated from best practices or most common
> custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).[3]

---

[3]Because these claims were not addressed on the merits by the Michigan courts, the "double
deference" normally given ineffective assistance claims under § 2254(d)(1), *see Harrington*, 131 S. Ct. at
788, is not applicable here.  Thus, I consider only whether counsel was ineffective under the *Strickland*
standard.

2.      *Trial Counsel*

Petitioner contends that trial counsel was ineffective in a number of respects.  The Court should reject each of these claims.

Petitioner contends that counsel failed to properly investigate, because he did not discover until trial that the knife used on Raquel had been recovered by the police three weeks after the assault.  Petitioner cannot show that counsel acted unreasonably in dealing with the knife evidence.  When the matter was first brought up, counsel objected that the prosecutor had not disclosed this fact.  *See* Trial Tr., 7/7/06, at 27.  Counsel then cross-examined the victim regarding her discovery of this knife and her failure to give it to the police at the time of their initial investigation of the assault.  *See id*., at 40-41.  Counsel elicited from the police officers that the knife had been brought to them by the victim, and the only way they could tell it was the knife used in the assault was by accepting the victim's statement that this was the case.  The police did not recover the knife during their investigation, and decided not to test the knife because of the chain-of-custody problems.  *See id*., dated 7/11/06, at 28-31.  During closing argument, counsel argued extensively that the problems with the discovery of the knife rendered the victim's testimony not credible.  *See id*. at 41-42.  Even if, as petitioner contends, counsel should have known about the discovery of the knife earlier, petitioner does not suggest any way in which counsel could have more thoroughly challenged this evidence.  He has failed to point to anything establishing a reasonable probability that, but for counsel's failure to discover the existence of the knife earlier, the result of the proceeding would have been different.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

Petitioner next contends that counsel was ineffective for failing to exclude the barbell and

26

broken knife from evidence.  This claim is without merit.  With respect to the broken knife used on Aaron, counsel did object to the admission of the knife; his objection was simply overruled by the trial court.  *See* Trial Tr., dated 7/10/06, at 36-37.  Thus, counsel was not ineffective for failing to seek exclusion of the broken knife.  With respect to the barbell, petitioner does not suggest any basis on which the barbell would have been inadmissible as evidence.  Petitioner contends that the DNA expert's testimony that there was insufficient blood on the barbell rendered it inadmissible is without merit.  There was circumstantial evidence to support the theory that the barbell was used to hit the victim, and the DNA expert's testimony merely created a credibility issue for the trier of fact to resolve.  Her opinion did not, however render the evidence inadmissible.  Thus, petitioner cannot show that counsel was ineffective for failing to seek exclusion of the barbell.

Petitioner also contends that counsel was ineffective for failing to seek DNA and medical experts to challenge the prosecution's evidence.  This claim is without merit.  Counsel's strategic decisions regarding what witnesses to call at trial are "virtually unchallengeable."  *Awkal v. Mitchell*, 613 F.3d 629, 641 (6th Cir. 2010).  The Court's "concern is not to decide, using hindsight, what [it] think[s] would have been the *best* approach at trial.  Instead, [the Court] consider[s] only if the approach ultimately taken was within 'the wide range of reasonable professional assistance' given the circumstances."  *English v. Romanowski*, 602 F.3d 714, 728 (6th Cir. 2010) (quoting *Strickland*, 466 U.S. at 689).  Here, petitioner cannot show that counsel's decision not to obtain a DNA or medical expert was unreasonable.  The DNA evidence, for the most part, excluded petitioner as a contributor to the blood found on the knife.  The only DNA evidence implicating petitioner was the DNA evidence found on a glove, but petitioner has presented nothing to show that a defense DNA expert would have questioned the validity of the results obtained by the prosecution's expert.

Further, there was no need for medical testimony regarding Raquel's injuries because her medical records were admitted.  It was undisputed that Raquel did not suffer a fracture or a concussion, and counsel used this fact to argue that petitioner did not intend to kill Raquel.  A medical expert would have added nothing that was not already before the court.  Further, as explained above it is petitioner's burden to establish the elements of his ineffective assistance of counsel claim, *see United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).  Thus, "a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits."  *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Pittman v. Florida*, No. 8:05-cv-1700, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008).  Here, petitioner has presented no such testimony from any expert.  Thus, he is not entitled to habeas relief on this claim.

Petitioner next contends that counsel was ineffective for failing to object to the prosecutor's closing argument regarding the glove found at the scene:

> But also the interesting piece of evidence, in that the glove that was found and analyzed by the DNA analyst in this case was found to have a tear in the palm and in the thumb.  Which if the Court would just use its common sense could clearly see it could be used in a manner to push a knife at a person's throat, and could be torn from the two pressure points where the blade would be making contact; the thumb and the palm.

Trial Tr., dated 7/11/06, at 36.  Petitioner has not explained, however how this comment was objectionable.  The discussion of the tears found in the glove was an accurate reflection of the testimony, and the prosecutor merely argued that those tears lined up with what parts of a hand would be in contact with a knife.  It is not inappropriate for a prosecutor to urge the trier of fact to

28

use common sense in evaluating the evidence. *See United States v. Catano*, 65 F.3d 219, 228 (1st Cir. 1995); *United States ex rel. Hamilton v. Ellingsworth*, 629 F. Supp. 356, 366 (D. Del. 1988). Counsel cannot be deemed ineffective for failing to raise a meritless objection to the prosecutor's argument. *See Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006) (counsel not ineffective for failing to raise meritless objection); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995) (same); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993) (same).

Petitioner next contends that counsel was ineffective for referring to the knife found by the victim as the "murder weapon." Counsel twice made this mistake, one time being corrected by a witness and one time correcting himself that it was an assault, not a murder. *See* Trial Tr., dated 7/11/06, at 29, 41. Petitioner cannot show how he was prejudiced by counsel's misstatements. It was clear that there was no murder involved, only assaults. It is also clear from the context that counsel simply misspoke inadvertently, and was immediately corrected or corrected himself. Particularly in light of the fact that this was a bench trial, petitioner cannot show that these two misstatements prejudiced him. The possibility of prejudice in these circumstances is minimal because "a trial judge acting as the finder of fact is presumed to have followed the law and relied only upon the evidence presented in rendering a verdict." *Matthews v. Abramajtys*, 92 F. Supp. 2d 615, 642 (E.D. Mich. 2000) (Tarnow, J.); *accord Harris v. Rivera*, 454 U.S. 339, 346 (1981); *United States v. Watson*, 87 F.3d 927, 930 (7th Cir. 1996); *United States v. Cardenas*, 9 F.3d 1139, 1155-56 (5th Cir. 1993).

Finally, petitioner contends that counsel was ineffective at the preliminary examination when he and the prosecutor attempted to characterize a motion made by Aaron reflecting how petitioner came at him with the knife. The prosecutor variously characterized the motion as a jabbing motion

29

and as a slashing motion, and counsel agreed with both characterizations.  At the outset, petitioner's

claim that counsel was ineffective because there was no medical evidence that Aaron suffered any

wounds is without merit.  Counsel was not agreeing with the witness as to the facts of what

happened; rather, counsel was merely agreeing with the prosecutor's characterization, made to be

clear on the record, of the gesture that the witness made in his testimony.  In any event, petitioner

cannot show how he was prejudiced by counsel's conduct at the preliminary examination.  Petitioner

does not argue that, but for counsel's conduct, he would not have been bound over for trial on the

charges, and the evidence at the preliminary examination even apart from the issue of Aaron's

gesture was more than sufficient to provide probable cause to support a bind over on the charges.

Thus, the Court should conclude that petitioner is not entitled to habeas relief on his ineffective

assistance claims.

      3.    *Appellate Counsel*

      Petitioner also contends that his appellate counsel was ineffective for failing to raise on direct

appeal the claims raised by petitioner in his motion for relief from judgment.  In evaluating the

performance of appellate counsel, it is well established that "appellate counsel . . . need not (and

should not) raise every nonfrivolous claim, but rather may select from among them in order to

maximize the likelihood of success on appeal."  *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing

*Jones v. Barnes*, 463 U.S. 745 (1983)).  Although it is "possible to bring a *Strickland* claim based

on counsel's failure to raise a particular claim, . . . it is difficult to demonstrate that counsel was

incompetent."  *Id*.  As a general rule, it is "'only when ignored issues are clearly stronger than those

presented [that] the presumption of effective assistance of counsel [can] be overcome.'" *Id*. (quoting

*Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).  Further, in the appellate counsel context, to

demonstrate prejudice petitioner must show a reasonable probability that his claims would have succeeded on appeal.  *See id*. at 285-86; *Benning v. Warden*, 345 Fed. Appx. 149, 155-56 (6th Cir. 2009); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).

Here, counsel raised two significant issues on direct appeal, claims that if successful would have resulted in a reversal of petitioner's convictions with no possibility of a retrial.  Petitioner has not shown that the claims he presented in his motion for relief from judgment are clearly stronger that the claims raised by counsel on direct appeal.  Further, as explained above, petitioner has failed to show that any of his claims have merit, and thus he cannot establish a reasonable probability that his claims would have succeeded on direct appeal.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his appellate counsel claim.

H.    *Recommendation Regarding Certificate of Appealability*

1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously

31

less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2. *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. The victims' testimony regarding petitioner's assaults on them provided more than sufficient evidence to support petitioner's convictions, and thus the Court's resolution of petitioner's sufficiency of the evidence claim is not reasonably debatable. Further, it is clear that petitioner's weight of the evidence and sentencing guidelines claims are not cognizable on habeas review, and that the *Apprendi* rule is inapplicable to Michigan's indeterminate sentencing scheme. Thus, the resolution of these claims is not reasonably debatable. Finally, for the reasons explained above the resolution of petitioner's ineffective assistance claims is not reasonably debatable. Accordingly, the Court should deny petitioner a certificate of appealability.

I.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the

objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 11/9/12

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on November 9, 2012.

s/Eddrey Butts
Case Manager

34